All rise. The United States Court of Appeals for the Ninth Circuit is now in session. Thank you. You may be seated. Good afternoon and welcome everyone to the Richard Chambers U.S. Court of Appeals Courthouse. The time is set today to hear the matter of United States of America v. Francisco Lucas, Jr. If the parties are ready to proceed, you may come forward. Good afternoon and may it please the Court. Sonny Henderson for the appellant, Francisco Lucas. I plan to reserve five minutes for rebuttal, and I'll watch my clock. So I want to talk about two key points today. First, while I know we're all here primarily to talk about the continued viability of this Court's clear and convincing evidence rule for some sentencing decisions, I do want to emphasize that Mr. Lucas should win even under a preponderant standard because the government's evidence clearly failed to meet even that lower burden. Second, this Court's longstanding clear and convincing evidence rule protects defendants' significant rights while imposing relatively minimum costs and is properly rooted in Supreme Court due process doctrine for selecting standards of proof, such that this Court should retain it, if perhaps in somewhat simplified form. And I'll start with the second issue because I do know that's why we're all here. So this Court's rule is fully consistent with due process principles. The Supreme Court has explained that due process requires considering the three factors, private interest, risk of erroneous deprivation, and the probable value of increased procedures to reducing that deprivation and the burden on the government. And then specifically with regards to standards of proof, they've told us that standards of proof reflect the relative importance of the decision being made and a determination of how the risk of error should be allocated. So if there's, you know, in this case, if there's a really large enhancement and there is an erroneous fact that is leading to that, who should bear the burden of that erroneous fact, the defendant or the government? So here, the private interest affected is significant. It's the criminal defendant's liberty and trust in the accurate determination of the guidelines sentencing facts, and especially facts with disproportionately large or underlying disproportionately large enhancements. So there is a due process right to be sentenced based on accurate information, and while the guidelines are not mandatory, the Supreme Court has repeatedly pointed us to their continued and significant real-world effect on sentences. They're the starting point. They're the initial benchmark. They anchor the district court's discretion. They're the lodestar of sentencing. And the Supreme Court's backed this up by pointing us to data showing that when guidelines go up, sentences go up. When guidelines go down, sentences go down. And the fact that there is a significant interest here, even post-Booker, is underlined by the Supreme Court's recognition after Booker that a miscalculation of the guidelines affects substantial rights for purposes of plain error in most cases, and that's in Molina-Martinez, and that a change in the guidelines creates enough risk of a higher sentence to trigger the ex post facto clause, and that was in Pew. And just recently, in United States v. Castillo, this court recognized that the guidelines give the sentencing commission, quote, extraordinary power over individuals' liberty interests. There's also a significant risk of error from lesser procedures. Sentencings don't usually involve disinterested experts and objective data. They involve witnesses with competing claims, often government agents and victims, other people interested in the outcome. They feature one party, the government, whose resources far outstrip that of the other party in terms of things like money, manpower, access to databases and other information. They lack evidentiary guardrails in that the rules of evidence don't apply, and sentencings are made messier still because the guidelines allow the government to raise a broad range of allegations beyond the basic charges. So there's sprouting proceedings with unequal parties, interested witnesses, no rules of evidence, and I think that leaves a lot of room for error to creep in. And the threat-convincing standard significantly ameliorates those risks with regard to these larger enhancements in a couple of ways. It pushes courts to review the government's evidence more carefully on these more impactful enhancements and make sure they're getting it right. And it also discourages the government from making aggressive claims based on weak evidence. And in terms of the third factor, the burden on the government, I think that the burden on the government from the increased standard is relatively minimal here. And the Supreme Court explained in Santoski that a higher standard of proof reduces factual error without imposing substantial financial burdens on the state as opposed to other kinds of procedures you could do or hearings. Has any court of appeals other than ours adopted this standard? No, Your Honor. So if we conscientiously review sentences for reasonableness, is there any need or rationale for imposing a clear and convincing evidence standard? I don't know that. Are you saying we might not be conscientious? I don't want to say that, Your Honor. I mean, from a defense perspective, reasonableness review rarely leads to reversal. I'll just put it that way. And I think there's a lot that goes into that soup. And, you know, you could have a problem here, and you could feel like it's weighed out in some other area, and the whole thing comes out as reasonable. I still think there is an important right to be had just in the calculation of the guidelines. As we see in Molina-Martinez, as we see in Pew, because they tethered the court's initial discretion. It might reach a higher, even if the sentence in some total sum is reasonable, it might reach a lower sentence, something that's more fair to the defendant, if the guidelines are lower and if the guidelines should be lower based on the accuracy of the information. That seems like a right that the defendant should have. So Pew and Molina-Martinez did not address the standard of review here. What is the best authority for the Supreme Court to accuse McMillan? Well, I think, I mean, it's a common, I mean, there's no one case that says it. It's a combination of cases. It's, you know, McMillan talking about the tail wagging a dog and leaving room open for that. It's, Matthews v. Is that dicta? I mean, in McMillan, the Supreme Court said that in that instance, and generally the preponderance standard would satisfy due process concerns. I mean, I think it is dicta in the sense that it wasn't the heart of the ruling. But, I mean, it's something the court said, and it prompted this in the first place. And then I think if you look at Santosky in terms of how we should make decisions about standards of review, and also I think Molina-Martinez and Pew, even though they're not about this, they're still important because they do identify that interest. I think a substantial right that sounds in liberty, as you see in Molina-Martinez, they say this is a substantial right. And it's a substantial right because it's a right that goes to how much liberty the defendant's going to get, how long of a sentence they're going to get. And so a substantial right that sounds in liberty sounds to me like something that the Due Process Clause protects. In your opening remarks, I think you said you might advocate for a different formulation of the rule. What would that be? So the government complains that it's complicated, and there is, I think, you know, certainly the first two factors don't seem to have, I mean, don't seem to have been overwhelmed by further case law. Well, I would advocate for a totality of the circumstances test and actually focus on the last two factors, the five and six, whether there's an increase in the number of offense levels of more than four, and whether the enhancement more than doubles the guideline range. And to me, these are the factors that really get at whether the particular enhancement is extremely disproportionate to what a guidelines range otherwise would be. Would you factor in whether the conduct underlying the enhancement was either charged or not charged, or whether if it was charged the defendant was acquitted of it? So like for factors three and four, I think I don't actually think they're necessary, Your Honor, and I'll explain why. I think if it's, it's a little unclear what, you know, I know in various cases we've talked about conduct and conviction, it's a little unclear what that is and how far that extends. It seems to be something more than the elements and less than the whole case, but there is confusion about what that means. And to the extent it's the elements, then it would make sense to take it into account, but it's also unnecessary because if you've already proven it, if it's an element, and it's already been proven beyond a reasonable doubt, then it doesn't really matter what the standard is. The government can be clear and convincing if it's already met beyond a reasonable doubt. If it's not an element, if it hasn't been proven, then I don't think there's any real justification for treating it as a lower, you know, subject to a lower standard. I see discussion in older cases about sort of an assumption that some conduct and conviction has been aired previously for the jury or has come up at some previous point, but unless it's an element, I really don't see how that's true because if a fact is part of the case but not an element, it doesn't ever have to be told to the jury. It doesn't have to be in a plea agreement. It doesn't have to be pled to. So, again, if it's an element, it's already been proved. If it's not an element, it hasn't been proved, and I don't see a justification for not applying a higher standard to it if it would otherwise, you know, meet the criteria of being an extremely disproportionate enhancement. Suppose we agree with you and we continue applying the clear and convincing standard, and I think nine other circuits apply preponderance of evidence, and there's a circuit split, so the Supreme Court grants cert. I mean, your honest assessment, what do you think the Supreme Court would do? Agree with us or the other nine circuits? I don't know, Your Honor. I would like to think that they'd agree with us. Do you think it's post-Booker? Do you think the Supreme Court would agree? Again, I just don't know that I see Booker as being the pivotal thing here because, again, there's post-Booker. The guidelines still, as discussed in Molina-Martinez and Pew, the guidelines still have a really powerful real-world effect on sentences and what sentences are, and, you know, I'd like to think that the Supreme Court's, you know, concerned about some of these same issues and about large, a lot of a person's penalty being determined at a sentencing phase with lower standards and lower proof rather than, you know, run through a more rigorous burden of proof. So, I mean, again, I recognize that in some senses it's a tough road to hoe. There is a circuit split. I would say the Court has never, it's not a new circuit split. It's been around for a long time. The Supreme Court has never taken cert on it, so it doesn't in some sense seem concerned about the split. But I would like to think that if the issue did come before them that they would recognize that there were concerns here, and it was worth addressing through these, you know, the same, you know, due process constitutional tests and these ideas about what standard of proof mean, that it's expounded in earlier cases. You say that Booker isn't really a problem. But what about Beckles? The Court's raising that a defendant does not have due process expectations since the guidelines are only within the statutory range. Yeah, I mean, again, I don't think Beckles is an issue. I think Beckles is ultimately, to my mind, a narrow decision on a narrow issue. It's about vagueness. And the Supreme Court tells us that vagueness only protects two very specific interests. It protects the defendant getting fair notice about what's prohibited and how it can be punished in avoiding arbitrary enforcement. And according to the Supreme Court, only two types of laws are challengeable under that, laws that define offenses, laws that set minimum and maximum sentences. And the guidelines aren't those. And so they're not challengeable as void for vagueness, but the Court acknowledged that just because the guidelines didn't fit the specific contours of void for vagueness didn't mean that they were insulated from other challenges. And I guess I don't read Beckles more broadly than that. The issue here is not the expectation in a sentence. It's not the expectation, oh, I could get something in this range. The issue is the probability of a higher sentence from higher guidelines based on facts that are not good facts. It seemed to me that what Beckles was commenting on was that these due process challenges were sort of born of the mandatory nature of the guidelines because they talk at length about the history of unfettered discretion of sentencing judges and comment that if it is not unconstitutional under unfettered discretion, how can it be unconstitutional under the guidelines when the judge just has to consider them. Again, it goes to being a void for vagueness decision because when the guidelines were mandatory... I'm sorry, I probably mispronounced that, but there was a subsequent case that reiterated all these principles that you don't have a due process right to be sentenced within the guidelines. You have a due process right to be sentenced within the statutory maximum minimum. Right, but you're not... So you don't have an expectation of a guideline sentence, but the guidelines are still... Again, to my mind, this is a separate issue not of what your expectation is, but of what you're actually getting, how your sentence is actually being determined. You have 3553A. You have the guidelines. They set out all these systems and procedures for how you're going to be sentenced. They set out facts that the court has to determine, and once the court is applying the guidelines, determining these facts, then we know that's going to have a larger effect on your sentence. Its determination of the facts should be subject to due process considerations. And here where it's larger facts that haven't previously been proven that are leading to large enhancements, it should be not by the lowest standard, but by the intermediate standard. But shouldn't the district judge vary from those guidelines in any event? They could. They have to have discretion even if they find certain facts by a preponderance, and that would lead to a large enhancement. So there's a decline to apply the enhancement. They could, but again, I think the insight that I see in Melina Martinez and in Pew is that it's not the possibility that they could vary. It's this risk. It's the probabilistic risk that you're going to get, if you get higher guidelines, you're going to get a higher sentence. And that makes how the guidelines are determined valuable to the defendant. It makes it a thing of value to the defendant to have the guidelines determined properly, and a thing of value sounding in the defendant's liberty because if the guidelines are determined at a lower point, the defendant is far more likely. They're not guaranteed. They don't have a due process right to a sentence within the guidelines. They're not guaranteed that, but they have a much better chance of that. And that much better chance is the thing of value. I think some of this, I think you obviously go to court all the time, so there's an anecdotal sense of what your feelings are. I'm having a little bit of difficulty getting my arms around really what the practical consequences would be of abandoning the clear and convincing. I mean, you talk about you think this, you think that, and I'm wondering is there a hypothetical situation where a disproportionate sentence that is otherwise reasonable would fail to meet the clear and convincing evidence? And do we know, you know, I'm trying to get out of what we feel, and I'm having a hard time seeing a practical difference. I mean, so you'd like a hypothetical where, so you have a guidelines determination. It pushes, that would meet this. You're pumped way up in the guidelines, a large jump in the guidelines. And then where it would be, still be reasonable because some other factors, that the judge slides in a 3553A setting. I suppose, again, it seems like it could happen. It's hard to spin out the facts in some sense. And sentencing for people that have done it know that there's a little bit of a, you have a feel for what you think the right sentence is, and somehow things get molded into that a little bit. So. I'm sure, but I think the judge's sense of what the right sentence is, I mean, certainly, you know, speaking anecdotally, and I apologize for it, but, you know, we go around. I see judges, I read a lot of sentencing transcripts. Where judges say what the guidelines are and then give the low end, the middle end of the guidelines. Even like here, when the judge chose to vary, he varied in terms of the guidelines. He expressed, didn't just jump into space and 3553A, and I'm just going to do this thing that has no relation to the guidelines. He's tethering it to the guidelines. Just like Melina Martinez and Pew describe. And I think, again, it's that what I understand from this court is a wide range of sentences can be reasonable in a particular case. And there's a lot that's left to the judge's discretion. And there's still, I guess the point that I see is that there's still value in having the judge's discretion exercise at the lower, like a lower point in what would be reasonable than a higher point in what would be reasonable. And getting to a correct guidelines range based on accurate facts is going to be part of how, in many cases will, as the Supreme Court recognizes in many cases will, would be part of how the district court gets towards that lower end of what a reasonable sentence would be. If we were to follow the reasoning of the dissent in the now vacated opinion, we wouldn't have to reach the issue of the standard of proof. Do you have a position on whether the relevant sentencing section is in the U.S., whether the application note is inconsistent with that, or do you think the argument's been forfeited by the government? I have thoughts on all that, Your Honor. I think it hasn't just been forfeited, it's been waived. And I use that advisedly. The government didn't just forget to raise the issue, it knowingly relinquished it. It didn't raise the issue in the district court. It didn't raise it on its brief on appeal. When it got to the panel, it told the panel that it had purposely chosen not to raise it because it thought that it could prevail under any standard and it wanted to pursue things in a narrower way. And then finally in a Tom Bott brief, it waived it for I think the third time when it explicitly said it wasn't seeking review of the panel's holding on that. So I think it's been repeatedly waived, and because the government's repeatedly waived it, we've never briefed it, and I would ask the court not to address it here. The waiver is the only reason that we can address. I mean, if they hadn't waived that issue, we wouldn't be talking about due process and the clear and convincing evidence standard. I mean, it seemed rather convenient to me that it was waived. This case is how here an artificial procedural posture manufactured by some people. I don't. Because in fact, it's troubling that the guideline says the firearm is capable of, but the application note says something else. Yeah, well, I can address that a bit on the merits, Your Honor. I mean, a few things. So in terms of the ambiguity, the Supreme Court tells us we don't just look at word definitions. We look at context, structure, history, purpose to determine if a text is ambiguous. Looking first at context, structure, and purpose, if we were to follow Judge Hurwitz's reading, this would, as I understand it, go on and cover basically every semiautomatic weapon. Because as far as I can tell, certainly all the most popular handguns in America, all the most popular semiautomatic weapons can be physically fitted with large capacity magazines, and there are large capacity magazines on the market for most of them. And so that seems at odds with the history and purpose, and that this guideline was adopted to replace one referring to the Federal Assault Weapons Ban, which only covered a much smaller range of handguns, really exotic stuff. Tech Nines, who sees that kind of thing? And then also the harshness of it. It's a six-level increase that sounds like something for really risky behavior and not something for, again, all the most popular handguns in America. And three, it was, you know, drafted at the same time by the same commission, and the commission in its explanatory notes, you know, said that the capable accepting was going to be defined by Application Note 2, indicating at least that the people who wrote it thought that it was a little bit ambiguous and warning Congress that it was going to be defined according to the commentary note. In terms of the, sorry, are you done with that? I was going to comment on the text itself, but I'm happy to answer your questions. Just before your time gets further down here, I just wanted to find out what you thought the best case to support reversing and remanding under a preponderance of the evidence statement. The best case for reverse? I don't know that I have a, I mean, I don't know that I have a case that's completely unappointed. We certainly cite some in our briefs where the court did reverse on that. But I think, you know, in terms of that preponderance, you have the government. It's a weird case in which you don't, the gun's never recovered, and the magazine's never recovered, so we don't have those. And instead we have pictures interpreted by experts, and both experts. And a recorded statement. And a recorded statement. There are big problems with the recorded statement. For instance, the government. Make sure that the list is complete. I apologize, but there are big problems with the recorded statement. I get into those in my brief. I can talk about them more if anyone wants to hear about them. But in terms of the preponderance, we have the two experts, governance expert, defense expert, both agreeing that you can't tell just by looking at this whether it's a California compliant one or not. Whether it's been, had its capacity reduced or not. And I think the panel properly described it as equivocal. The evidence, and I don't think equivocal evidence can meet preponderance of the evidence. I mean, I think equivocal means it could go either way. Preponderance means that a judge is convinced, to a lower standard, but convinced of the fact. I don't think you can be convinced by equivocal evidence. Counsel, if we were hypothetically to decide that the preponderance of the evidence standard were correct, and, again, hypothetically reject your view that the evidence didn't support the preponderance of the evidence standard and that the evidence here was sufficient, would there still be any reason for us to remand the case? I'm sorry, you're? I'm saying we're going to reject, hypothetically, we're going to find it should be preponderance of the evidence and hypothetically reject your view that the evidence doesn't support even the preponderance. Given that the district court found clear and convincing, would there be any reason for us with those two hypothetical rulings to remand the case? Well, I'm just pushing back on the idea that since it found clear and convincing, it must be preponderance. The district court did make legal error in how it interpreted the commentary note. Assuming we're proceeding under the commentary note, I think it wouldn't make, to my mind, more sense to send it back for them to, for the district court to do it properly under the proper reading of the commentary note rather than assume that preponderance had been there. I'd like to reserve whatever I have left, thank you. Good afternoon, Your Honors. May I please have the court brand open for the United States? There's no dispute that this court stands alone in continuing to apply the clear and convincing evidence standard to any of the facts for the advisory sentencing guidelines purposes. My friend has conceded that point. And I want to explain why, even though that stark circuit split is itself reason to reconsider this court's precedence, I want to focus on why I think all of those other circuits got it right. And I actually want to start by agreeing with a statement from the Federal Defenders' amicus brief in this case, which is that there is only one Supreme Court case that controls the due process question at hand, McMillan v. Pennsylvania. That is the case that Judge Koh mentioned, and I do think that is the controlling precedent. That is the case in which the Supreme Court evaluated Pennsylvania's statute that, at the time, imposed a five-year mandatory minimum based on a sentencing factor, specifically if the defendant had a visible gun in commission with certain predicate felonies. And the Supreme Court held that even in that circumstance, where a sentencing fact triggered a mandatory minimum, that the proper burden of proof was the preponderance of the evidence standard. Indeed, the petitioners in McMillan didn't even dispute that if this had been a discretionary regime where Pennsylvania judges were permitted to impose that five-year sentence, they would have had no due process claim. They would have had no claim that a heightened standard is necessary under the due process clause. So I really do think that case controls the outcome here. After that case, what happened was this Court, in the last time it considered this issue on Bonk, which was 1991 in Restrepo, took what the Supreme Court said in McMillan and latched onto it during a mandatory guidelines era to say that there might indeed be cases in which due process would mandate a higher burden of proof when the tail wagged the dog, the proverbial tail wags the dog example. That made sense during the mandatory guidelines regime, when a sentencing fact could dramatically increase and automatically increase a defendant's sentence. It does not make sense during an advisory guidelines era. The Court in McMillan, in addition to reaching that holding in Part 3 of its opinion that there was no heightened burden of proof, pointed out two other things that I think are important here. One, traditionally, judges found sentencing facts without any prescribed burden of proof at all. Under the guidelines, we agree that the due process clause requires a preponderance standard, but pre-guidelines, there was no burden whatsoever. Another point that I think is important about McMillan and Restrepo is that the tail that wags the dog only exists where the factor has an extremely disproportionate effect  That's what this Court picked up on, and there is no tail wagging the dog necessary effect on the sentence when the judge has control over the tail, just as it did in this case. As my colleague pointed out, the judge in this case, the district judge, varied below the actual guidelines range. He said, I am going to grant this defendant a one-level variance and sentence him at the low end of that range. After that decision in McMillan, after this... I may have misheard you. Are you saying that due process requires the preponderance of the evidence standard of proof only when the guidelines are mandatory? No. Is that what you just argued? No. I'm saying that due process requires a preponderance standard as to guidelines determinations in the advisory era. That due process might have occasionally required clear and convincing evidence in the mandatory guidelines era, and that due process does not require any burden of proof with respect to facts that don't implicate the defendant's guidelines range. In that context, when a fact doesn't actually implicate the guidelines range, this court most recently in its Franklin decision in 2021 said that the standard is the fact false or unreliable, and that's what due process requires outside the guidelines context. Within the guidelines context, I agree that the preponderance standard should always govern, that the government must meet that burden. Can you tell me why? So before Restrepo, this court decided a case called Wilson, which said that due process should require at least a preponderance standard, and I think the reason why and why that continues to make sense even in an advisory regime is due to the cases that my friend points out, Molina-Martinez, Gall, this court's decision in Cardi, all the cases that say that the guidelines are the anchor, the framework, the guiding lodestar for the district court, because the guidelines fill that role, I do think it's important for there still to be a preponderance standard. And the other reason I would say, Judge Acuda, is that in Watts, which comes later, and the Supreme Court decides that in 1997, the court says the preponderance standard should still apply to acquitted conduct even, and I think in saying that, the court was endorsing this notion that there should at least be some burden in a guidelines regime. After, of course, to get into some of the other cases that we've been talking about, the Supreme Court decides Beckles, and in addition to the other prior precedents, it reinforces the conclusion that in an advisory regime, there need not be a heightened burden of proof. Judge Beatty pointed this out, I think this is exactly right, which is that there is no expectation of a sentence within the guidelines range anymore. And that decision in Beckles was indeed premised on the idea that all of these constitutional constraints and parameters are rooted in the history of the federal sentencing guidelines. So, Beckles reinforces that notion. Other circuits have agreed, of course, post-Booker, post-Beckles in particular, that there is no need for a heightened burden of proof, and part of the reason... Which is exactly why I started with the case that you mentioned earlier, McMillan, because I do think McMillan is the controlling precedent. I would agree that Beckles is not directly on point with respect to due process heightened burdens of proof, but I think it nonetheless should cast some light on another provision of due process. Just as vagueness is one provision, the burden of proof is another. And given the Court's statements in Beckles about how the vagueness challenges could no longer be mounted after the guidelines became advisory, it makes sense to conclude that McMillan and the other precedents do come into play and only require the preponderance standard. Let me ask you a question about this case. Assuming that the preponderance of the evidence standard is the one that applies, how can the evidence supporting Lucas's enhancement meet that standard when the expert conceded that it couldn't conclude whether the magazine could actually be modified to accept fewer than 15 rounds of ammunition? So both experts in this case, both ours and the defense expert, agreed that by just looking at the photo you could tell it was extended length. Granted, that does not necessarily mean high capacity, but both experts also said an extended length magazine is designed in its ordinary course to be a large capacity magazine. In fact, the defense expert, looking just at the photo of Lucas's magazine, said, this to me looks like a magazine that could hold 22 or even 31 rounds of ammunition. So the preponderance standard being more likely than not, it is more likely than not that this was not modified to limit its capacity. Why isn't that speculative? There are, first of all, I think it flows from the common sense principle that ordinarily something is in its ordinary state, but I think there's other points of evidence that reinforce that. First is the ATF nexus expert's statement that he had never seen a large capacity magazine with a restriction of this nature that would have limited it to lower than 15. So despite the fact that both of the experts said that without examining it physically, they couldn't really make a determination, which the panel, the three-judge panel, the majority said that they're both equivocal. And so I guess the question is, if they're both equivocal on that, how does that get you to 51% here? So I would push back slightly in saying that I think they were equivocal solely as to whether they could say for sure that a modification had been inserted or not. That doesn't mean that the totality of the evidence was equivocal and the panel didn't say that. The three-judge panel said the government's expert was equivocal. When you add the additional evidence to that, I think it gets you beyond the 50% threshold. But let's say just the additional evidence, then, just to be clear, I want to make sure I understand. So you have the government's expert saying that he's never encountered one of these before, and I think that that doesn't meet the clear and convincing standard. Never encountered one that was California compliant. Sorry? That he had never encountered one with a blocker, never encountered one that was compliant. I believe that his statement was he had seen numerous magazines that were extended length that had never encountered one that was California compliant. Can you just – I don't want to derail you from answering Chief Judge McKay's question, but if you could tease that out. We have other evidence on the record, indications that there's this way to block them and make them California compliant. So what do we do with that? It seems like you're really focusing on that particular expert had or had not seen something. I'm just trying to figure out how do we get to – because Chief Judge McKay is asking you how do you get to that being anything other than equivocal. That is why he couldn't state conclusively, and his word was I can't say conclusively, that this is something that would hold more than 15 rounds. When you combine that with the fact that both experts agree that these are ordinarily manufactured to hold more than 15 rounds, and Judge Kristen, you pointed to the phone call in which another inmate who's part of defendant's gang is recorded. Okay, so the phone call's got other problems, and we're going to come back to that. I think that is the universe of evidence, right? The two experts looking at the photo. Nobody ever had the object in front of them. What's your best shot at answering Chief Judge McKay's question? Before you move on to the recorded call, please. Your best shot at why those experts' opinions are not equivocal. I would say that those experts are both inconclusive. I agree with that. What I think is necessary, though, is that the panel was operating under a clear and convincing evidence standard, and I agree that that wouldn't reach clear and convincing evidence. I understand that. So it's like why does it reach – how does inconclusive evidence reach preponderance? You have to start from the proposition that these are ordinarily manufactured to hold more than 15 rounds. You would have to insert some device, some block or some pin in order to limit this. So there's a presumption. I'm trying to understand this, and it's not a trick question or anything. I just want to understand because I know the government has the burden here, right? Would you agree? Yes. So if no expert came on at all, do you think there's a presumption there that you win? That's a very close case, but I would say when you have a device that in its ordinary state is manufactured to hold more than 15 rounds, is it more likely than not that it has been modified or that it is in its ordinary state? If that were the whole of the universe, I don't know that we could defend that even on a preponderance standard, but it's not. So tell me the rest of the universe. So we have, in addition to the expert, we have the call from an inmate who is at the Santa Ana jail when a defendant is arrested and housed there as well. And he is reporting to another member of their gang that Choco, which is defendant's moniker, is here for a 40-glock with a 30-round stick. The government argued below, and I think it's a fair inference, that a 40-glock with his gun was indeed a glock with a 30-round stick. The 30-round stick was indicative of the amount of ammunition that that magazine could hold. What we don't know is whether that was hearsay or gossip or how he knows what he knows, right? How do we put any weight on that? What weight should we put on that? Let me ask it that way. Of course, at sentencing, the district court can consider it. Nonetheless, notwithstanding that it's hearsay, that we don't know the foundation for it, what that needs to be is, is it false, or does it have a minimal indicium of reliability under this court's decision in Franklin? Right. And so what's your best shot at convincing us that this guy knows what he's talking about? When it's corroborated by the photo that appears to show a magazine that is in excess of, that both experts agree in its ordinary course would be in excess of 15 rounds, in addition to the government's ATF nexus experts saying that he has never encountered one that is of limited capacity, that totality is enough. I'm just interrupting. I didn't mean to cut you off. What do we do with this other bit of evidence, this other fact we've got? You're referring to this object in its ordinary course. It's as manufactured. And the other data point we have is that it is possible in California to make this thing California compliant, right, to block part of the capacity. So I'm not sure what the ordinary state is if we're talking about a gun in California. What do we do with that? So even the defense expert agreed that while some guns that are shipped directly to California will have a limited capacity to reduce them below 15 rounds, that expert report noted that this defendant, Lucas' magazine, was so long, it wouldn't have even been one of the ones that was 15 rounds when shipped out of state, that he estimated that it was a 22- or 31-round magazine to begin with. So this wasn't like a magazine that gets shipped to every other state without a restrictor or blocker in, and then to California with one. It was a magazine that, no matter where it would be sent, would require something to limit its capacity in order to get it within 15. So how do we get to, I'm still grappling with why one wouldn't be speculating about the extent of which it was or was not limited, and I feel like I'm missing something, judging by the expression on your face. But you are welcome to tell me what I'm missing. I have nothing more than what I've given you. The totality of the evidence is. Well, let me ask you this. When I'm hearing all of this, it seems like some people think that's a preponderance, and some people think that maybe it wouldn't be, right? So if it was good enough for the district court, is that entitled to any deference? Thank you for making that point. I'm just trying to, you know, we don't all, you know, judges are not all cut out of the same cloth, and you can have the same case and it can be decided differently, but does that make either one of them wrong? I 100% agree with that proposition. This would be reviewed for clear error only. The panel said in its opinion that the district court clearly erred in finding this by clearing convincing evidence. However, if the standard were a preponderance of the evidence, the district court did not clearly err. Its decision was not illogical, implausible, or unsupported by inferences that can be drawn from the record. Doesn't that suggest that if we were to agree with the government's position that we should apply a preponderance of the evidence standard, that we should remand it for resentencing so the district court would have the opportunity to consider the evidence under the correct standard? That's not necessary, given that the district court itself already believed that this evidence satisfied the clear and convincing evidence standard. Certainly, the inference to be drawn from that is that it believed that the lower standard was also met. In the panel's view, there was the error in that the application note says that the firearm needs to be capable of receiving the extended magazine at the time of the offense, and also the district court only referenced the jailhouse call in a footnote without taking a position as to what inferences of any it was drawing from that, what it was deciding from that call. So, at least the panel's view, there was a mistake in how the district court applied the application note when saying that the modification could be easily removed at some other time, which may not be the time of the offense. That's fair. This court, of course, could affirm on any basis supported by the record, just as in any other case, and this court can look at that evidence. I'm not aware of other evidence, although I suspect if we were to have to meet a burden on remand, we might introduce more evidence about the prevalence of these blockers and the rarity of them. But given the state of this current record, that is sufficient for this court to affirm without remanding. I'm sorry. What did we do about application 02? Because if we remanded to the district court, the panel, at least, thought the district court had a misunderstanding. You didn't brief application 02 here, so there's really no way for us to address it, or is there? The government is not asking this court to address application 02. I agree with my friend that we did not brief that issue. It was not calculated. This brief was filed before this court's decision in Castillo, where this court, for the first time, applied Kaiser to the guidelines, and we filed this brief after the Castillo decision. I believe we would have made this argument. So isn't that a reason why we should just vacate the sentence and remand by the district court to consider all of these things? So at this stage, it is needed. We just need considering the application and the guideline. I mean, if it's going to also be considering this whole thing under a new standard, it needs to consider the correct law. And you're right. This is a new correct law. And why shouldn't we remand to the district court to just resentence, taking all this new law into consideration? I think my friend has a fair point when he says that the government waived this by failing to address it in its answering brief. I don't think it is correct to say we waived this by not raising it below, because we can argue for affirmance on any basis as the appellee. However, the rule is that the government has to make the argument in its answering brief at cost or risk of waiver. We didn't make this argument. We didn't anticipate this argument until after Castillo, when the panel invited us to make this argument, an oral argument, by issuing an order shortly beforehand. We attempted to make the argument. We did an oral argument. However, it is unreasonable for the panel, the three-judge panel, to have concluded that because we failed to make this argument in our answering brief, we waived it. Now the panel also said that the district court was free to consider this and they weren't taking position that the district court should do a fair remand, because it was an issue that was on the panel, as you know, that we injected into the case, not the parties. Yes, and if this were to be remanded, instead of having gone on bonk, where we could advance our argument for overruling the clear and convincing evidence standard, our intention would have been to argue to the district court that application note 2 is not valid under Kaiser and Castillo. Nonetheless, so. So that would suggest, in my view, the government wasn't doing anything sneaky or tricky or trying to manipulate the case because making that argument is to your favor. You wouldn't have to deal with any of the explanation in application note 2. It was capable of receiving the extended magazine. Both of the experts testified it clearly is. Absolutely. If I had anticipated that argument as the appellate chief in my office, I would have told the AUSAs to make it. I did not anticipate it before we filed our brief. Given the stage and the posture that we're at now, though, it does seem more reasonable to say the government didn't advance that argument. In its answering brief, this court's going to reach the due process question of whether there should ever be a heightened burden of proof under the advisory guidelines regime. And if this court does think that a remand is nonetheless necessary once the court announces that that standard is no longer applicable post-Booker, then certainly I think the government should be free to argue to the district court whether we satisfy the preponderance standard or you can apply this enhancement because the guideline note is enough. Can I clarify one thing that you said earlier? If someone were to argue post-Beckels, a criminal defendant does not have a due process interest to be sentenced within their presumptively applicable guideline range. Therefore, they have no due process interest in any specific standard of proof. You would say that's wrong, right? Because you earlier just said that under any regime, mandatory or advisory guidelines, a criminal defendant would have a due process interest in at least the preponderance of the evidence standard of proof. Yes. You would say that's wrong. Yes, I would. I would say that because of Molina-Martinez and because of Cardi and because of Gall and because of the importance in the guidelines determination to any defendant sentence that there is a due process right to a preponderance standard. I have a question for you. We've had a fair number of questions and discussion about speculation in this case, what evidence is speculative. From my review of the expert reports and the testimony, the defendant's expert was speculating that the magazine could have been altered. There's no actual evidence of that other than he looked at the photograph, said it's long enough to hold 22 to 31 rounds of ammunition, but there's this possibility in the universe that it could have been changed. That's correct. And that gets back to where does this really begin when you start from the ordinary magazine of this length has a capacity of 22 to 31 rounds, is that by itself sufficient to prove that it is more likely than not that this was not altered from its ordinary state? Again, I think that's a close question and that we might be able to prevail even with that limited presumption sort of evidence, but that is not the totality here. Let me ask if the court were to abandon the clear and convincing evidence standard of proof here, do you think the concerns raised by Mr. Lucas would then be addressed through sentencing reasonableness review under 3553A factors review? What is the new regime that would get at looking at these concerns? Yes, I think it would be under a substantive reasonableness regime, which is what a lot of other circuits, including the Seventh Circuit, the amicus brief sites, and then I believe defense sites in Reuter held, that we are now transitioned into a reasonableness regime where this court then does always, if the issue is raised, review for substantive reasonableness. And I do want to point out that there was a question that Judge Callahan had asked about what are the real-world implications of this. They are so exceedingly narrow. And I looked at the defense cases and the amicus brief cases of examples where this actually makes a difference. One of them that the amicus brief leads with is called Shafi, a case in which the district court said, I am holding the government to a clear and convincing evidence standard as to a terrorism enhancement because it makes a big difference here. But the district court went on to say, I've explained why I think the terrorism enhancement doesn't apply, but if it did, my sentence would be the same. I would have rejected the guidelines range of 168 to 211 months and varied down to the equivalent of a time-served sentence, which is 40 months. District courts do this all the time. They take an enormous guidelines range. Lanage is the exact same scenario. In Lanage, which was one of the most recent cases where this court grappled with the issue at great length, the district court took a 292 to 365-month range and sentenced one of the defendants to 80 months. So district courts, as my friend put it, exercise a lot of discretion. A lot is left to the judge's discretion. I agree with that. And if a district court is really concerned that the government's evidence is barely meeting the preponderance standard for a guidelines enhancement, the court can consider that under the 3553A factors. But do you agree with your opposing counsel that that substantive reasonableness review rarely leads to reversal? I do. And I think that the heightened burden of proof rarely leads to reversal, too, and actually causes much more litigation, judicial resources, party resources to dispute, than it does have an actual effect on most defendant sentences. To just go through a few of the other examples in the briefs, the defense and the amicus brief file, Mises de Jesus and Reed were both mandatory guidelines-era cases, and we don't even know from the records there what happened on remand. In ritual, the district court said, on remand, the standard didn't matter. I would, under a clear and convincing evidence standard, reaffirm it's my previous factual findings. This happens time and again where a district court is asked to apply a heightened standard, and doing so comes to the same conclusion. What rarely happens is that it makes a difference. So unless the court has any further questions, the government would ask that it overrule its past precedents, applying a heightened burden of proof, and affirm the district court sentence in this case. Thank you, Mr. Kirk. Thank you. Thank you, Iris. In terms of, I guess I'll just start where the government left off, in terms of it rarely making a difference, I don't know that the appeals outcomes are the measure of value of this, because it also matters whether the district court rejects, I mean a district court could get a request for enhancement from the government, properly reject it under the heightened standard, and then you would never see an appeal. The government could look at an enhancement that's large, but supported by weak evidence and decide not to pursue it because of the high standard. That would never show up on appeals. I don't know that the appeal wins is really the measure of it. I feel like the government's argument is kind of like saying trials don't matter because defendants usually lose them. In terms of what's normal, and in terms of magazine configurations, the government's making an argument that what's normal is the original billed configuration of these guns. I don't think you can make that argument in California, where California, to have the magazine in California, for the magazine to come into California, it's supposed to be California compliant. It's supposed to be modified to only hold 10 rounds. I don't think there's an argument that tells us the prevalence of that. No, and this is the point the panel made, that the government didn't put any evidence of the prevalence. They just want to say that since the original billed is this, there's some principle whereby we should assume that they continue to be that. You didn't draw the inference, so this firearm was stolen, and there's a report of it being stolen with a magazine that could hold 10 rounds. And so your experts positing that the magazine could have been altered means that a defendant who was violating federal law by possessing a firearm stole a firearm, which led to the trouble to modify an extended length magazine. No, it was stolen with normal length magazines. Yes, it was stolen with normal length magazines. And so the extended length magazine came from somewhere else, and there's no reason to think, I mean he had to acquire it from somewhere. He's in California. Figures he acquired it in California, and then the question is what's around to acquire in California California compliant magazines? So he would be very concerned about that even though he was possessing it? I don't know if he would have been concerned about it or not. I'm saying what he would have found. What's out in the world to find is California compliant magazines because this is California. So it's not all that's out there. It's not all that's out there. I wonder if you steal something and then you don't get a lot in the magazine. I'm sorry, Your Honor. That's kind of a bummer that if you steal something and then you get one that's California compliant. Well, we don't know where it came from. And, again, the point is we can't assume it was the government's burden. They were supposed to prove it. They didn't put on prevalence evidence. They didn't put on anything else. Dr. Latham, I'm wondering if you could respond to a point that we teased out a minute ago. Okay. And that is that we talked a lot about, in follow-up to Judge McGee's questions, about whether this evidence does or does not amount to a preponderance. Yes. Because the counsel thought it was perhaps equivocal on the original panel. But, of course, this is a finding that the district court made, and now on review, of course, for Judge Callahan's question, that finding is entitled to deference. Do you want to respond to that? Yes. Just one last thing I just really need to say about the government made a claim about the expert report saying that he'd never seen any modifications. He just said he'd never seen a blocker. He was very specific about never seeing a blocker. And the report said that these can be modified with pins, with rivets, with other means. So he's talking about one means of modification. In terms of your point in deference, or your question in deference, again, I see that the district court made a pretty significant legal error in how it's interpreting application note 2 because it's just ignoring this whole at the time of the offense. The district court's logic is, I don't really have to think about it at the time of the offense because this could be modified. Even if it was modified to be California compliant, it could have been modified back at some future point. That's the district court's reasoning. The district court's not adding up the jail call and adding up the, you know, some whispers of prevalence or whatever in the record. He's just saying it doesn't really matter because it could have been modified back. And I think the panel very correctly said you can't read application note 2 that way. It's at the time of the offense. So given that the district court's ruling seems to be based on a legal error, I don't see it so much as a factual determination requiring a lot of deference as a legal error, requiring the district court to do it again under the correct standard. So it's the time of the offense when the photographs were taken? The time of the offense, I mean, the time of the offense is possession of it, so certainly when the photographs were taken, but we don't. Probably before and after, not just that moment when he's actually sitting on a toilet with a gun on the rug and the floor taking photographs. Probably not. Someone had a gun on the toilet, and that was some of his possession of it, right? We don't know what his possession was beyond that. Any final? Sorry? Any final? Oh, yeah. See, I'm out of time. I would just note the government's concession that preponderance applies for the advisory guidelines, and I do think that begs the question, if preponderance applies to small enhancements under the guidelines, why wouldn't we look at Matthew C. Eldridge and Santoski and think about what a large enhancement deserves? Thank you. Did you have a question? I was just wondering, if declaring a missing evidence standard were to be abandoned, what would you like the post-regime to look like? Is that substantive reasonableness? Is it 3553A considerations would be considered when reviewing a factual dispute that would have a disproportionately large impact on the Senate? I guess I would hope that if this court were to place this in substantive reasonableness territory, we would see more robust substantive reasonableness decisions, because, you know, it seems like a lot of those don't even make it to argument and a full panel. I mean, you write about substantive reasonableness, you're pretty much guaranteed you're not getting, if that's all there is, you're not getting arguments. So if that's where we're sticking an important decision like this, I would beg this court to consider the substantive reasonableness a little bit more robustly than we perceive it as being looked at. Thank you. Thank you. Mr. Henderson, Mr. Alden, thank you both very much. I really appreciate the oral argument presentations today. The case of United States of America v. Francisco Lucas, Jr. is now submitted, and we are adjourned. Thank you. All rise. This court, for this session, stands adjourned.
judges: MURGUIA, WARDLAW, RAWLINSON, CALLAHAN, IKUTA, CHRISTEN, BENNETT, BADE, LEE, KOH, THOMAS